IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE SOLIS, | ) | Civil Action No.: |
| 7999 Eurogrey Court | ) | |
| Blacklick, OH 43004, | ) | |
| | ) | Judge |
| Plaintiff, | ) | |
| | ) | Magistrate Judge |
| vs. | ) | |
| | ) | |
| THE OHIO STATE UNIVERSITY | ) | **COMPLAINT** |
| WEXNER MEDICAL CENTER, | ) | |
| c/o Ohio Attorney General Dave Yost | ) | |
| 30 East Broad Street, 14th Floor | ) | |
| Columbus, OH 43215, | ) | **Jury Demand** |
| | ) | **Endorsed Hereon** |
| Defendant. | ) | |

**THE PARTIES**

1. Plaintiff Stephanie Solis ("Plaintiff") is a citizen of the State of Ohio and resides in Blacklick, Ohio, in the County of Franklin.

2. Defendant The Ohio State University Wexner Medical Center (the "Medical Center") is an entity of the State of Ohio which employs doctors, nurses, and other personnel to evaluate, care for and treat patients at its hospitals, clinics and outpatient facilities. The Medical Center provides medical training and education to matriculating students, and retains doctors, nurses and other medical care personnel to provide supervision and instruction to students, interns, residents, and others.

3. The Medical Center and the State of Ohio employ doctors, nurses, and other personnel to evaluate, care for and treat patients at hospitals, clinics and

outpatient facilities and acts through its agents and employees who are acting within the course and scope of their employment.

## TITLE VII COVERAGE

4. At all relevant times, the Plaintiff was employed by the Medical Center, and the Medical Center was an employer as defined in Title VII of the Civil Rights Act of 1964, as amended and codified in 42 U.S.C. § 2000e(b), *et seq*.

5. This Court has subject matter jurisdiction over this matter pursuant to its federal question and civil rights jurisdiction. The federal claims are made pursuant to Title VII of the Civil Rights Act of 1964, as amended.

6. This Court has personal jurisdiction, and venue is proper in this Court because the events pertinent to this lawsuit occurred in the Southern District of Ohio, Eastern Division.

## FACTUAL BACKGROUND

### Plaintiff's Professional Background

7. Plaintiff is an African American female born on June 5, 1975.

8. Plaintiff received an Associate Degree in Nursing from Ohio University in 2007, a Bachelor of Science in Nursing from Ohio University in 2012 and a Master of Science in Nursing, Family Nurse Practitioner, from Chamberlin College of Nursing in 2016.

9. Plaintiff has worked as a Staff Nurse for the Medical Center since 2011.

10. Since February of 2012 Plaintiff has worked as a Staff Nurse on the Fifth Floor in the Medical Center's Vascular and Cardiothoracic Surgery Unit at Ross Heart Hospital.

11. In her position as a Staff Nurse, Plaintiff has more than a dozen years of acute care experience working with Thoracic Surgery patients.

12. In 2018, Plaintiff was licensed by the Ohio Board of Nursing to practice as an Advanced Practice Registered Nurse ("APRN"), which is also referred to as a Certified Nurse Practitioner ("Nurse Practitioner"). The Plaintiff's Nurse Practitioner certification is in Family Medical Care, which is often referred to as FNP, or Family Nurse Practitioner.

13. In April of 2023, the Plaintiff began working part-time as a Nurse Practitioner in Addiction Medicine at Ohio Health.

14. Since April of 2023, the Plaintiff has split her employment between the Medical Center and Ohio Health. The Plaintiff works part-time as an Addiction Medicine Nurse Practitioner and part-time as a Staff Nurse in the Medical Center's Vascular and Cardiothoracic Surgery Unit.

### Plaintiff's Promotion Efforts

15. The Medical Center refers to both Nurse Practitioners and Physician Assistants as Advanced Practice Providers (collectively, "APPs").

16. Between 2018 and the end of 2024, the Plaintiff applied for dozens of APP positions with the Medical Center.

3

17. Despite being qualified for each and every one of these APP positions, the Plaintiff has not received a single APP job offer from the Medical Center.

18. In order to maintain their license, Nurse Practitioners are required to work as a Nurse Practitioner for at least 1,000 hours in a five-year period. As the Plaintiff became certified as a Nurse Practitioner in late 2018, her Nurse Practitioner license was set to expire on December 31, 2023, unless Plaintiff was able to document that she had worked 1,000 hours as a Nurse Practitioner in the prior five-year period.

19. As she was unable to get a job as a Nurse Practitioner at the Medical Center despite her numerous efforts to do so, in April of 2023 Plaintiff cut her schedule as a Staff Nurse with the Defendant to part-time. At the same time Plaintiff began working part-time as a Nurse Practitioner in Addiction Medicine for Ohio Health.

20. As of March 15, 2025, the Plaintiff continues to work part-time at each of these two positions.

## Prior Protected Conduct

21. In September of 2022, the Plaintiff submitted charges to the Ohio Civil Rights Commission, asserting that the Medical Center's failure to hire her for several APP positions in 2021 and 2022 was unlawful employment discrimination on the basis of race. These charges were designated as OCRC Charge No. COLE1(50192).

22. Plaintiff withdrew OCRC Charge No. COLE1(50192) in April of 2023, and subsequently filed a lawsuit against the Medical Center in this Court, styled as Case No. 2:23-cv-01390.

23. Case No. 2:23-cv-01390 alleged that the Medical Center had unlawfully discriminated against Plaintiff because of her race by failing to hire her to two separate APP positions.

24. On March 7, 2024, a motion for summary judgment filed by the Medical Center in Case No. 2:23-cv-01390 was granted, and judgment was entered in favor of the Medical Center.

25. The Plaintiff subsequently appealed the March 7 ruling to the Sixth Circuit Court of Appeals. The Sixth Circuit affirmed the District Court's ruling on October 25, 2024.

## Plaintiff's Employment Evaluations

26. The Plaintiff is a well-regarded employee both in her role with the Medical Center and with Ohio Health.

27. The Plaintiff has always received positive annual performance evaluations from the Medical Center, and in the past several years has received many compliments about her patient care.

28. In the fourteen years Plaintiff has been employed by OSU she has been disciplined on a single occasion – in 2016 for tardiness.

29. In the Plaintiff's most recent evaluation from her other employer, Ohio Health, she was found to be an exceptional Nurse Practitioner in Addiction Medicine and a "real joy to work with." The Plaintiff was also described by her supervisor at Ohio Health as reliable, positive, and always willing to help and professional.

## Recent Promotion Attempt

30. In May of 2024, the Plaintiff applied for a position as an APP in Addiction Medicine with the Medical Center, JRN R104001. Being hired for this position would have been a promotion for the Plaintiff.

31. The job posting for R104001 stated that candidates with Addiction Medicine experience were preferred. A copy of correspondence describing R104001 is attached hereto as Exhibit 1.

32. As a Certified Nurse Practitioner, the Plaintiff met the minimum qualifications for R104001. Moreover, Plaintiff had thirteen (13) months of experience as a Nurse Practitioner in Addiction Medicine at the time she applied for R104001, so she also met the job description's preference that the candidate for R104001 have specific Addiction Medicine experience.

33. On May 11, 2024, the Plaintiff emailed the hiring manager for R104001, attaching her resume and expressing an interest in the position. In her email Plaintiff describes her experience working as an APP in Addiction Medicine. This email is attached hereto as Exhibit 2.

34. After a previous rejection, the hiring manager for R104001 discussed with the Plaintiff how to improve her performance at interviews and, while appreciating the advice, Plaintiff explained that racial discrimination seemed the real cause for her rejection.

35. During her interview for R104001 the Plaintiff was asked about and discussed her experience as an APP in Addiction Medicine. The Plaintiff specifically recalls informing the interviewers that her Addiction Medicine APP position at her

6

current employer, Ohio Health, had provided her with more advanced experience than she would have had as an Addiction Medicine APP at OSU's Medical Center. The Plaintiff told the interviewers that at Ohio Health she conducted new patient consults and follow-ups independently, while at OSU's Medical Center the Addiction Medicine APPs were not authorized to conduct new consults on their own.

36. JRN R104001 was awarded to a white candidate whose resume does not disclose any prior experience working in Addiction Medicine. A copy of the resume submitted by the white candidate who was hired is attached hereto as Exhibit 3.

37. The interview grid from the candidate interviews for R104001 shows that the interviewers knew that the white candidate ultimately hired for R104001 had no experience in Addiction Medicine as the interview grid notes next to the employee's name "No psych/addiction experience." *See* Exhibit 4 attached hereto.

38. Additionally, prior to the Medical Center's offer of APP position R104001 to the white candidate, a hiring manager for R104001 received an email which emphasized that, while the white candidate had an impressive background, she **has "no addiction experience"** and "[i]f everything else is the same then … a Psych/mental health NP would be preferred over other specialties." *See* Exhibit 5 attached hereto.

39. The Plaintiff had 13 months of experience in the Psych/mental health arena at the time she applied for R104001.

40. Despite the Job Description's preference that candidates for R104001 have experience in Addiction Medicine, the Medical Center knowingly hired a white

7

candidate with no addiction medicine experience instead of a black candidate with 13 months of APP addiction medicine experience.

41. The Medical Center has falsely claimed that the Plaintiff failed during the interview to discuss her experience in Addiction Medicine.

42. The annual base salary paid to the white candidate awarded R104001 is $107,141.66.

## Administrative Agency Process

43. On July 22, 2024, the Plaintiff submitted charges of unlawful race and age discrimination and retaliation to the OCRC and EEOC, styled as OCRC Charge No. COLA1(008368) and EEOC Charge No. 22A-2024-04853. These charges stemmed from the Medical Center's failure to hire the Plaintiff for APP R104001 position (the "2024 Charge").

44. The 2024 OCRC charge was withdrawn in October 2024. A copy of the Withdrawal is attached hereto as Exhibit 6.

45. The EEOC issued a Right to Sue in Charge No. 22A-2024-04853 on December 27, 2024. A copy of the Right to Sue is attached hereto as Exhibit 7.

## Relevant Statistics

46. In October 2024 the Sixth Circuit Court of Appeals ruled in Case No. 24-3230 that the relevant labor market for APPs at the Medical Center was the Greater Columbus, Ohio area. *See Solis v. The Ohio State University Wexner Medical Center*, 2024 WL 4579501, *7 (Oct. 25, 2024).

8

47. The Greater Columbus area includes Franklin County and its six surrounding counties – Delaware, Licking, Pickaway, Fairfield, Madison and Union.

48. According to the Ohio Board of Nursing, in 2023 Three Thousand One Hundred and Six (3,106) Nurse Practitioners resided in the seven counties which make up the Greater Columbus area. Of this total, 336 were Black or African American, or 10.82%.

49. According to the Ohio Medical Board, 940 Physician Assistants resided in the Greater Columbus area in 2024. Thirty-five (35) of these Physician Assistants, or 3.723%, were Black or African American and 844 were White.

50. On December 5, 2024, in response to a public records request, the Medical Center produced a Human Resources report listing the race of virtually all APPs employed by the Medical Center at that time. A copy of this record is attached hereto as Exhibit 8.

51. According to the Medical Center's own records, there were 588 APPs employed there in 2024. Exh. 8. All but eight (8) of the 588 APPs employed at the Medical Center disclosed their race. *Id.*

52. The Medical Center's Human Resources Report shows that 497 of the 588 APPs employed by the Defendant were White, or 84.52% and that twenty-nine of the 588 APPs employed by the Defendant were Black or African American, or 4.93%. *See* Exh. 8.

53. Statistical evidence can be considered circumstantial evidence of discrimination.

54. Statistical evidence may evince pretext when the statistics indicate a disproportionate pattern of conduct toward a protected group. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466-68 (6th Cir. 1990).

55. To create an inference of discrimination statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity.

56. A Chi-Square Test of Association is used to determine if there is any association between two variables in a given population. A Chi-Square test compares different employment groups' expected numbers to their actual numbers and also provides the probability that the differences observed between the expected and actual numbers employed are due to random chance.

57. If the resulting probability value (also known as p-value) is smaller than the significance level of 1%, or 0.01, a conclusion can be drawn that there is sufficient evidence, beyond chance alone, that there is a difference between *an unprotected class* and a protected class in the selection rate.

58. According to a Chi-Square statistical test completed by Harvey S. Rosen, Ph.D. there is a statistically significant difference between the expected number of African American APPs employed at the Medical Center compared to the actual number of African American APPs employed there. *See* Exhibit 9 attached hereto.

59. According to Dr. Rosen, African American APPs at the Medical Center are underrepresented at 29 actually employed versus 54 expected to be employed. There is a statistically significant difference between the expected and actual number

10

of African American APPs at the Medical Center as a statistical significance exists with a p-value of less than .01 and the p-value is less than 0.000765. Exh. 9.

60. According to Dr. Rosen, this difference is so large that to almost a certainty the observed pattern at the Medical Center could not be due to random chance. These statistics cast serious doubt on the assumption that this disparity between expected versus actual was caused by random chance. Exh. 9.

## Damages

61. The Plaintiff's base annual salary as a part-time Staff Nurse with the Medical Center in 2024 is $44,480, while her total compensation, including retirement benefits, from that position and her Ohio Health position is significantly less valuable than the compensation for the R104001 position.

62. The Plaintiff would be earning more money on both an hourly and annual basis and entitled to a significantly higher pension if she had been hired by the Medical Center for position R104001.

## FIRST CAUSE OF ACTION
### (Race discrimination in Addiction Medicine in Violation of Title VII, 42 U.S.C. § 2000e-2)

63. Plaintiff incorporates Paragraphs 1 through 60 above by reference as if fully rewritten herein.

64. Plaintiff is African American and a member of a protected class under Title VII.

65. The Medical Center was aware of the Plaintiff's race.

11

66. The Medical Center's decision not to offer JRN R104001 to the Plaintiff was an adverse action against the Plaintiff.

67. The Medical Center discriminated against Plaintiff on the basis of her race with respect to the terms, conditions, and privileges of her employment by offering R104001 to a white employee who was less qualified than the Plaintiff for R104001.

68. The Medical Center lacks and continues to lack any legitimate business reason for its adverse action of failing to hire the Plaintiff for R104001, and any other stated explanation for its conduct is a mere pretext for discrimination.

69. The Medical Center's conduct in connection with the failure to promote the Plaintiff constitutes an unlawful employment practice on the basis of race in violation of Title VII, 42 U.S.C. § 2000e-2.

70. As a direct and proximate cause of the Medical Center's actions, the Plaintiff has suffered harm, including, but not limited to, front pay, back pay, emotional harm, compensatory damages and attorney's fees and is entitled to judgment as a matter of law.

71. The Plaintiff seeks all damages allowed by law.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII 42 U.S.C. § 2000e-2)

72. Plaintiff incorporates Paragraphs 1 through 69 above as if fully set forth herein.

73. Plaintiff engaged in protected activity from September of 2022 to the present, starting when she submitted race discrimination charges to the OCRC and EEOC.

74. Plaintiff continued to engage in protected activity through October of 2024 as she pursued and appealed her race discrimination claims against the Medical Center in U.S. District Court and the Sixth Circuit Court of Appeals.

75. The Medical Center knowingly discriminated against Plaintiff in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2 by failing to hire Plaintiff for R104001 because of her involvement in protected activities.

76. As a direct and proximate cause of the Medical Center's failure to hire Plaintiff for R104001, the Plaintiff has suffered harm, including, but not limited to, front pay, back pay, emotional harm, compensatory damages and attorney's fees and is entitled to judgement as a matter of law.

77. Plaintiff seeks all damages allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff suffered damages proximately caused by the acts of the Medical Center in violation of her rights under Title VII of the Civil Rights Act of 1964 and demands judgment against the Medical Center and the following relief:

A. Compensatory damages in an amount in excess of $75,000, including back pay, front pay, consequential damages, and incidental damages;

B. Attorney's fees, court costs, and interest;

C. Promotion to an APP position on first shift at the Medical Center;

    D.    Pre-judgment interest on all back pay and benefits and post-judgment interest on any judgment granting other damages; and/or

    E.    All other relief determined by the Court to be appropriate, just and equitable.

Respectfully submitted,

**COHEN ROSENTHAL & KRAMER LLP**

/s/ Ellen M. Kramer
Joshua R. Cohen (0032368)
Ellen M. Kramer (0055552)
3208 Clinton Avenue
One Clinton Place
Cleveland, Ohio 44113
(216) 815-9500 (Telephone)
(216) 781-8061 (Facsimile)
jcohen@crklaw.com
emk@crklaw.com

**MARSHALL FORMAN & SCHLEIN LLC**

*/s/* John S. Marshall
John Marshall (0015160)
250 S Civic Center Dr #480
Columbus, Ohio 43215
(614) 463-9790 (Telephone)
jmarshall@marshallforman.com

Attorneys for Plaintiff

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff, Stephanie Solis, hereby demands a trial by jury on all issues so triable with the maximum number of jurors permitted by law.

/s/ Ellen M. Kramer
Ellen M. Kramer (0055552)

14